IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VICKIE W.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:17cv324 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

Plaintiff Vickie W. ("Vickie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433. Vickie alleges that the Appeals Council erred by refusing to consider additional medical evidence submitted after the ALJ's decision. Vickie further alleges that the Administrative Law Judge ("ALJ") erred by failing to properly analyze her mental impairments and explain how the RFC reflected those impairments. I conclude that the Appeals Council erred by refusing to consider additional medical evidence submitted after the ALJ's decision. Accordingly, I **GRANT in part** Vickie's Motion for Summary Judgment (Dkt. No. 15) and **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 22), and **REVERSE AND REMAND** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Vickie failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Vickie filed for DIB on May 20, 2013, initially claiming that her disability began on September 16, 2011 due to arachnoiditis[4] but subsequently amending her alleged onset date to February 14, 2013, by letter to the ALJ.[5] R. 197, 212, 215. Vickie's date last insured was December 31, 2015; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB.[6] R. 105; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Vickie's

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Arachnoiditis is caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. See https://www.ninds.nih.gov/Disorders/All-Disorders/Arachnoiditis-Information-Page

[5] Vickie notes that that ALJ never acknowledged her amended onset date in his decision. Pl.'s Br. at 2, Dkt. No. 16, R. 193.

[6] Vickie was 40 years old on her alleged onset date, making her a younger person under the act. R. 105.

applications at the initial and reconsideration levels of administrative review. R. 96–103, 105–16. On February 2, 2016, ALJ Carlos Tierney held a hearing to consider Vickie's claims for DIB. R. 33–62. Counsel represented Vickie at the hearing, which included testimony from vocational expert Patricia Posey. On May 31, 2016, the ALJ entered his decision analyzing Vickie's claims under the familiar five-step process[7] and denying her claim for benefits. R. 18–28. The ALJ found that Vickie was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease of the lumbar spine, neuritis/radiculitis, disc displacement without myelopathy, depression, and anxiety.[8] R. 20. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21. Specifically, the ALJ considered listing 1.04 (Disorders of the spine), 13.10 (breast cancer), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). R. 21–23. The ALJ concluded that Vickie retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 23. Specifically, the ALJ found that Vickie could only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and could never climb ladders, ramps, or scaffolds, or crawl. Id. Regarding understanding, remembering, and carrying out instructions, Vickie is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, and is limited to simple

---

[7] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[8] The ALJ found that Vickie's asthma, bilateral mastectomy with reconstruction, and tension headaches were medically determinable impairments that were non-severe. R. 20–21. The ALJ further found that Vickie's alleged foot and right leg pain, and arachnoiditis, were not medically determinable impairments. R. 21.

work-related decisions when using her judgment and dealing with changes in the work setting. Id.

The ALJ determined that Vickie was unable to return to any of her past relevant work, but that she could perform jobs that exist in significant numbers in the national economy, such as document preparer, folder, and food sorter. R. 27–28. Thus, the ALJ concluded that Vickie was not disabled. R. 28. Vickie appealed the ALJ's decision and the Appeals Council denied her request for review on May 17, 2017. R. 1–4. This appeal followed.

## **ANALYSIS**

Vickie alleges that the Appeals Council erred by refusing to consider additional medical evidence submitted after the ALJ's decision. Vickie further alleges that the ALJ erred by failing to properly analyze her mental impairments and explain how the RFC reflected those impairments.

### A. Relevant Medical History

Vickie has a history of chronic lower back pain with parasthesias, and depression. A CT scan in February 2013 showed L3-4 and L5-S1 annular tears. R. 293. Vickie had a spinal cord stimulator implanted in August 2013, which involved surgical implantation of a device to send mild electronic current to the spinal cord to control pain. R. 296, 300–301. Prior to the surgery, during her monthly visits to George M. Baylor, M.D. at Blue Ridge Pain Management Associates, Vickie reported pain levels of 7/10, while following the surgery she had decreased pain to 5/10, but continued to experience moderate limitations in range of motion of the lumbar spine, muscle spasms, and mildly reduced paraspinal muscle tone. R. 296, 309–47, 421–45.

Vickie underwent a psychological evaluation by John Heil, D.A. in June 2013 who found depression and anxiety, with no manipulative behavior or malingering. R. 289. Bill Mercer, P.T.

conducted a functional capacity assessment in March 2016, noting poor lumbar muscle tone, severely limited active lumbar range of motion, and that Vickie's pain had a high impact on her activity level. R. 581, 586–87.

State agency doctors Gene Godwin, M.D. and Richard Surrusco, M.D. both found that Vickie was capable of working, with a limitation to only four hours of standing/walking, six hours sitting, and occasional postural activities.[9] R. 96–103, 105–115.

Vickie submitted to the Appeals Council completed questionnaires from her treating physicians Robert Deveraux, M.D., and George Baylor, M.D., both dated in August 2016, and which related to Vickie's functional capacity. R. 81–86. The Appeals Council made these questionnaires part of the court transcript index and they were included in the certified administrative record on appeal to this court. Dr. Deveraux found that Vickie could sit, stand, or walk for only 30 minutes at a time during a workday. R. 81. Dr. Baylor found that Vickie could sit for less than an hour and stand or walk for less than 30 minutes at a time during a workday. R. 84. Drs. Deveraux and Baylor also noted that, while the implantation of the spinal cord stimulator provided initial relief, significant complaints of pain returned. R. 82, 85. Both Drs. Baylor and Deveraux found that these limitations related back to the alleged onset date.

### B. Post-Hearing Evidence

Vickie argues that the additional evidence presented to the Appeals Council following the ALJ's decision, consisting of two questionnaires completed by treating physicians, merits remand. The questionnaires contained the opinions of Vickie's pain management specialist Dr. Baylor and primary care physician, Dr. Deveraux, and were completed in August 2016, three months following the ALJ's decision. R. 81–83, 84–86. Both doctors found limitations in the

---

[9] The ALJ indicated in his opinion that the state agency doctors limited Vickie to four hours of sitting/standing. R. 26.

questionnaires that Vickie argues would preclude employment, including significant limitations in how long Vickie could stand, sit, and walk, and how much she could lift and carry.[10]

Vickie complains that the Appeals Council did not explain its decision not to consider the new evidence and emphasizes that the record on which the ALJ based his decision "contained no opinions from any other treating physicians." Pl.'s Br. at 7, Dkt. No. 16. The Commissioner counters that the Appeals Council appropriately considered the evidence submitted in reaching its decision to not grant review. Further, the Commissioner argues that "when the Appeals Council considers additional evidence, but denies review," a court must consider the record as a whole, including the new evidence, to determine whether the ALJ's decision, is supported by substantial evidence. D.'s Br. at 6, Dkt. No. 23. Thus, I must first decide whether the Appeals Council considered the new evidence, and, if not, whether that was error.

The "Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (internal quotations omitted).[11] Evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96.

---

[10] Drs. Baylor and Deveraux concluded Vickie could sit, stand, and walk no more than two hours in an eight hour day. R. 81, 84. Dr. Deveraux concluded Vickie could lift and carry less than 10 pounds occasionally, and never more than 10 pounds. R. 81. Dr. Baylor found Vickie could frequently lift and carry less than 10 pounds, occasionally carry 10 pounds, but never carry 20 pounds or more.

[11] There is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council. Wilkins, 953 F.2d at 96 n. 3. Indeed, the Appeals Council sent Vickie a letter dated August 8, 2016 indicating that she was permitted to send more new and material evidence within 25 days. R. 8. The questionnaires from both Drs. Baylor and Deveraux were dated within this time frame.

However, I do note that the rules the Appeals Council applies when considering review changed on May 1, 2017, now mandating that a claimant must show good cause for why he did not submit the additional evidence previously. See 20 C.F.R. 404.970(b).

6

However, the Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011) ("Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review.') (citation omitted); see also Riley v. Apfel, 88 F.Supp.2d 572, 579–80 (W.D.Va.2000) ("When this court is left in the dark as to how the Appeals Council treated the new evidence a meaningful review is impossible."). When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

Thus, I must first determine whether the Appeals Council considered the additional evidence, or simply determined that it did not relate to the relevant period and thus did not consider it. The Commissioner argues that the Appeals Council did not fail to consider the additional evidence, while Vickie indicates that the Appeals Council's actions and reasoning were "unclear." D's Br. at 5, Dkt. No. 23, P's Br. at 7, Dkt. No. 16. The Appeals Council wrote in regard to Drs. Baylor and Devereaux's questionnaires, "We did not consider and exhibit this evidence" and did not list the questionnaires on the Order of Appeals Council, which listed the additional evidence made part of the record. R. 2, 6; See also Smith v. Berryhill, No. 7:17-CV-50-RJ, 2018 WL 1014167, at *9 (E.D.N.C. Feb. 22, 2018) (noting that while the Appeals Council "looked at" evidence submitted, it "did not consider it and incorporate it into the

7

record"). The Appeals Council's statement that it did not consider or exhibit the questionnaires from Dr. Baylor or Dr. Deveraux, dated August 31 and 17, 2016, respectively, and the fact that questionnaires are found in the Court Transcript Index portion of the certified administrative record, not the exhibit section, support a conclusion that Appeals Council did not consider the questionnaires.[12] The Appeals Council's statement that "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision" (R. 2) does not change this conclusion, as it does not clearly show that the Appeals Council considered the questionnaires, especially when read in conjunction with the Appeals Council statement that it did not consider the questionnaires. Thus, I find that the Appeals Council did not consider the questionnaires completed by Drs. Baylor and Deveraux.

Second, I must determine whether the questionnaires were new, material, and relate to the period on or before the date of the ALJ's decision; if so, the Appeals Council erred in failing to consider the questionnaires, and the matter must be remanded. See Wilkins, 953 F.2d at 95 (holding that "the Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review"); Briggs v. Berryhill, No. 4:16-CV-240-FL, 2017 WL 4230584, at *7 (E.D.N.C. Aug. 30, 2017), report and recommendation adopted, No. 4:16-CV-240-FL, 2017 WL 4226040 (E.D.N.C. Sept. 22, 2017) (citing to HALLEX and finding that the Appeals Council erred in finding that the Medicaid decision did not relate to a period before the date of the ALJ's decision, and thus refusing to consider the Medicaid decision).

---

[12] According to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") regarding the Consideration of Additional Evidence by the Appeals Council, when the Appeals Council does not consider additional evidence it will "[n]ot exhibit the evidence," will "[a]ssociate a copy of the evidence in the appropriate section of the file," and "[t]he evidence ... will be included in the certified administrative record if the case is appealed to Federal court." HALLEX § 1-3-5-20; See https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html. This is what happened here.

8

Here, the questionnaires are new – i.e. they are not duplicative or cumulative, as the record did contain Drs. Baylor and Deveraux's opinions during the administrative hearing and the ALJ did not have the benefit of the questionnaires in making his decision.[13] Further, the questionnaires are material because they contain the opinion of two treating physicians that Vickie is greatly limited in her ability to work. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987) ("[The treating physician] rule requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence."). These opinions from treating physicians could reasonably change the outcome; especially given the greater weight afforded a treating physician's opinion. See Wilkins, 953 F.2d at 96 (noting that evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome"). Finally, the questionnaires plainly related to a period before the date of the ALJ's decision because the doctors both related their opinions back to February 14, 2013, Vickie's alleged onset date. See Wilkins, 953 F.2d at 96 ("This court has recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment."). Accordingly, I conclude that the questionnaires were new, material, related to the period on or before the date of the ALJ's decision, and thus, the Appeals Council erred in failing to consider the questionnaires.

I note that, even had I concluded the Appeals Council considered the questionnaires of Drs. Baylor and Deveraux, remand would still have been necessary here. This is because there is evidence in the record that both conflicts with and/or supports the opinions of Drs. Baylor and Deveraux, as set out in the questionnaires. For example, the doctors' opinions in the questionnaires conflict with the opinions of the state agency physicians, to whom the ALJ

---

[13] In fact, the record contained no opinions from any other treating physicians, either.

assigned great weight. However, the doctors' opinions corroborate the opinion of Mercer, a physical therapist, to whom the ALJ assigned little weight. As Vickie points out, the ALJ discounted Mercer's opinions based, in part, on "entries from [Vickie's] treatment records, which the ALJ felt contradicted [Vickie's limitation] and which, as it so happens, were Dr. Baylor's treatment records." Pl.'s Br. at 16. The evidence here is not one-sided, but instead the probative value of competing records and opinions must be assessed, which is "quintessentially the role of the fact finder." Meyer, 662 F.3d at 707; See also Davis v. Astrue, No. CIV. A. 3:07CV00010, 2008 WL 2872214, at *3 (W.D. Va. July 24, 2008) (citations omitted) ("[I]f additional evidence has been submitted that creates a conflict, is contradictory, or calls into doubt a decision based on the prior medical records and the Appeals Council has not explained its reason to deny review, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence.").

Because I find that remand is warranted based on the Appeals Council's failure to consider additional medical evidence submitted after the ALJ's decision, Vickie's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

For these reasons, Vickie's motion for summary judgment is **GRANTED in part** and the Commissioner's motion for summary judgment is **DENIED** and this case is **REMANDED** to the Commissioner for further consideration consistent with this Opinion.

Entered: September 24, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge